UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X
MANUEL MATEO

      Petitioner,

  - against -

FISHKILL CORRECTIONAL FACILITY

      Respondent.

------------------------------X

MEMORANDUM AND ORDER

Civil Action No.
CV-04-3420 (DGT)

TRAGER, District Judge:

    Manuel Mateo ("Mateo" or "petitioner") brings this pro se
petition under 28 U.S.C. § 2254 for writ of habeas corpus,
arguing that a supplemental jury instruction deprived him of a
fair trial, that his sentence was excessive and vindictively
imposed on the basis of crimes for which he had been acquitted
and that the evidence adduced at trial was legally insufficient.
For the following reasons, the petition is denied.

**Background**

**(1)**

    Petitioner was charged with two counts each of Criminal Sale
of a Controlled Substance in the First Degree (N.Y. Penal Law
§ 220.43(1) (McKinney's 1999)), Criminal Possession of a

Controlled Substance in the Second Degree (N.Y. Penal Law
§ 220.18(1) (McKinney's 1999)), Criminal Possession of a
Controlled Substance in the Third Degree (N.Y. Penal Law
§ 220.16(1) (McKinney's 1999)), and Criminal Possession of a
Controlled Substance in the Seventh Degree (N.Y. Penal Law 220.03
(McKinney's 1999)).  Government Affirmation in Opposition ("Gov.
Aff.") ¶ 6.

At a jury trial presided over by the Honorable Judge Leon
Ruchelsman, the state introduced the testimony of several
detectives involved in the undercover operation that led to
petitioner's arrest.  Detective Luis Flores ("Flores") testified
that on March 23, 2000, petitioner dropped off Hector Vidal
("Vidal") at a restaurant in Brooklyn where Vidal met with
detective Flores, who was posing as a drug dealer.  Trial Tr.
("Tr.") at 68:9-14; 69:11-24.  After forty-five minutes,
petitioner returned to the restaurant and met privately with
Vidal.  Tr. at 70:12-16.  Immediately following this meeting,
Vidal handed more than sixty grams of cocaine to Flores in
exchange for $2295.  Tr. at 70:21-25.

Flores also testified that on May 24, 2000, he and Vidal met
again at the same restaurant.  Tr. at 79:2-8.  Again, after
approximately forty-five minutes, petitioner arrived at the
restaurant and met privately with Vidal.  Tr. at 80:23-81:5.

2

Detective Matthew Lloyd ("Lloyd") testified that he observed, via surveillance camera, this meeting between petitioner and Vidal. He testified that the two men exited the restaurant having a conversation, and that during this conversation petitioner placed his hand in Vidal's jacket pocket and then removed it. Tr. at 138:8-15. Vidal then walked away from petitioner and met again with Flores. Flores testified that Vidal told Flores that he had the drugs, and the two of them left the restaurant and entered Flores's car. Tr. at 81:2-8. Once inside the car, Vidal removed approximately sixty grams of cocaine from his jacket pocket and handed it Flores in exchange for $2000. Tr. at 81:11-13; 82:20-83:1.

After the jury had been charged, the prosecution requested a supplemental instruction that circumstantial evidence can be stronger than direct evidence, and the jury received the following instruction: "I want to instruct you that circumstantial evidence can be stronger than direct evidence. The weight to be given to circumstantial evidence is up to you, the jury." Tr. at 233:21-23; 235:13-16.

On December 12, 2001, the jury convicted petitioner of one count of Criminal Possession of a Controlled Substance in the Second Degree, N.Y. Penal Law 220.18(1), a class A-II felony, and acquitted petitioner on the other charges. Tr. at 247:1-5. On

3

February 19, 2002, the court imposed the maximum sentence of
eight and a third years to life for petitioner's conviction.
Sentencing Transcript ("Sent. Tr.") at 5:3-6.

**(2)**

Mateo appealed to the Appellate Division, Second Department
("Appellate Division"), arguing that the supplemental jury
instruction was inappropriate and prejudicial, that his sentence
was excessive and that he had been vindictively sentenced for
crimes for which he had been acquitted.  Mateo Brief on Appeal
("Br.") at 10, 14.  On March 8, 2004, the Appellate Division
affirmed petitioner's conviction.  People v. Mateo, 5 A.D.3d 507,
772 N.Y.S.2d 576 (2d Dep't 2004).  As to petitioner's objection
to the jury charge, the court held that, "[c]ontrary to [Mateo]'s
unpreserved contention, the Supreme Court's supplemental charge
on circumstantial evidence did not deprive him of a fair trial,"
since the charge was both a correct statement of the law, and
non-prejudicial to Mateo.  Id. at 507, 772 N.Y.S.2d at 577
(citations omitted).  With respect to petitioner's other claims,
the Appellate Division held that he was not sentenced excessively
or for crimes for which he had been acquitted.  Id. at 507, 772
N.Y.S.2d at 577.

After leave to appeal to the New York Court of Appeals was denied, <u>People v. Mateo</u>, 2 N.Y.3d 802, 814 N.E.2d 474, 781 N.Y.S.2d 302 (2004), petitioner filed a <u>coram nobis</u> petition in the Appellate Division, arguing that his appellate counsel was ineffective for failing to contest the sufficiency of the evidence adduced at trial. Gov. Aff. ¶ 11. On November 8, 2004, the Appellate Division rejected the petition, holding that Mateo had failed to establish that his counsel's assistance was ineffective. <u>People v. Mateo</u>, 12 A.D.3d 461, 783 N.Y.S.2d 852 (2d Dep't 2004). On January 25, 2005, the New York Court of Appeals denied petitioner leave to appeal the denial of his <u>coram nobis</u> petition. <u>People v. Mateo</u>, 4 N.Y.3d 765, 825 N.E.2d 141, 792 N.Y.S.2d 9 (2005).

Mateo then filed this petition pursuant to 28 U.S.C. § 2254, raising two of the same issues brought on direct appeal, specifically, attacking the supplemental jury charge and his sentence, and raising one new issue, namely, that the evidence was legally insufficient to convict him of Criminal Possession of a Controlled Substance in the Second Degree. Mateo's Petition for Writ of Habeas Corpus ("Pet.") at 5-6. The state responded to the petition, arguing that: (1) Mateo's attack on the jury charge is procedurally barred, or, in any event, without merit; (2) Mateo's sentencing claims do not present a federal

constitutional issue, and are without evidentiary support; and
(3) Mateo's insufficiency claim is procedurally barred, or, in
any event, without merit.  Government Memorandum of Law in
Opposition ("Gov. Mem.") at 1-4, 5-6, 7-11.  Petitioner then
filed a Traverse on February 28, 2005.


                          **Discussion**


                            **(1)**

                     **Standard of Review**

     The Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA"), 110 Stat. 1214 (1996), establishes a deferential
standard of review for federal court habeas corpus proceedings.
See also 28 U.S.C. § 2254(d)-(e).  Under this standard, a federal
court may grant habeas relief only when a state court
adjudication on the merits of a federal claim was "contrary to,
or involved an unreasonable application of, clearly established
federal law, as determined by the Supreme Court of the United
States," or was "based on an unreasonable determination of the
facts in light of the evidence presented in the State court
proceeding."  28 U.S.C. § 2254(d)(1)-(2).

     In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme
Court elaborated on the application of § 2254(d)(1).  State court

adjudications are "contrary to" federal law as determined by the
Supreme Court when the state court "applies a rule that
contradicts the governing law," or, having found facts that are
"materially indistinguishable" from a Supreme court decision,
nevertheless reaches a different result. Id. at 405-406. A
decision meets the "unreasonable application" criterion when the
state court "identifies the correct governing legal principle
from th[e] Court's cases but unreasonably applies that principle
to the facts of the prisoner's case." Id. at 413.
"Reasonableness" is to be determined objectively, rather than
subjectively, so that "a federal habeas court may not issue the
writ simply because that court concludes in its independent
judgment that the relevant state court decision applied clearly
established federal law erroneously or incorrectly." Id. at 411.
Rather, "some increment of incorrectness beyond error is
required" in order to grant federal habeas relief. Francis S. v.
Stone, 221 F.3d 100, 111 (2d Cir. 2000) (discussing the Williams
reasonableness standard). AEDPA also requires that findings of
fact by the state court are presumed to be correct, and that
petitioner bears the burden of rebutting such findings by "clear
and convincing evidence." 28 U.S.C. § 2254(e)(1).

7

## Petitioner's Claims

### a. Supplemental jury instruction

Mateo first argues that by giving the supplemental jury instruction that circumstantial evidence can sometimes be stronger than direct evidence, the trial judge deprived him of his right to a fair trial. Pet. at 5. This argument was raised on direct appeal to the Appellate Division, which held that the claim was unpreserved, but that in any event that the charge represented a correct statement of New York law and was not prejudicial. Mateo, 3 A.D.3d at 507, 772 N.Y.S.2d at 577.

### i. Independent and adequate bar

The state urges that because the Appellate Division held that this claim was unpreserved on direct appeal, the claim is precluded from federal habeas review on the basis of the independent and adequate bar doctrine. Gov. Mem. at 2 (citing Coleman v. Thompson, 501 U.S. 722 (1991)). This doctrine holds that "federal courts may not review the judgment of a state court that 'rests on a state-law ground that is both independent of the merits of the federal claim and an adequate basis for the court's decision.'" Jimenez v. Walker, 458 F.3d 130, 136 (2d Cir. 2006) (quoting Harris v. Reed, 489 U.S. 255, 260 (1989)).

When a state court disposes of a federal claim on a state procedural ground, federal habeas courts presume that the state court did not reach the merits of any federal question, and, if this procedural ground is both adequate and independent, federal habeas review will be inappropriate. However, when a state court disposes of a federal claim on the merits, federal habeas review is warranted to ensure that the state court has correctly applied federal law. See 28 U.S.C. 2254(d)(1) (before federal habeas review is warranted, a federal claim must have been "fully adjudicated on the merits," rather than on a state procedural ground). As Jimenez has made clear, a federal habeas court is faced with a binary decision: either find that the state court reached the federal merits, and, therefore, that AEDPA review is warranted; or find that the state court decision rests on an adequate and independent state ground, so federal review is not warranted. Jimenez, 458 F.3d at 145-146.

Hence, the Appellate Division's opinion must first be examined to determine whether a procedural ground was in fact the basis of the affirmance, or whether the Appellate Division rested its affirmance on the merits of Mateo's claim. Here, the crucial portion of the opinion is somewhat ambiguous. It states: "[c]ontrary to [Mateo]'s unpreserved contention, the Supreme Court's supplemental charge on circumstantial evidence did not

9

deprive him of a fair trial.  The supplemental charge conveyed a correct statement of the law.  Moreover, the charge, read in its entirety, was fair, balanced, and not prejudicial to [Mateo]." Mateo, 5 A.D.3d at 507, 772 N.Y.S.2d at 577 (citations omitted).

The Second Circuit has on numerous occasions visited the issue of whether an ambiguous state law decision, resting alternatively on procedural and merit-based grounds, is "on the merits" for AEDPA review and deference purposes.  DeBerry v. Portuondo, 403 F.3d 57, 70-72 (2d Cir. 2005) (Walker, C.J., concurring) (collecting cases).  Particularly troublesome for federal habeas courts was deciding whether to consider state court decisions ruling that "appellant's remaining arguments are either unpreserved for review or without merit" as decided on the merits, warranting federal review, or as resting on state procedural grounds.  Id. at 70.

Recently, Jimenez clarified the rule for such cases and held that when a state court decision includes an "either/or" statement of procedural and merit-based grounds, Fama v. Comm'r of Corr. Servs., 235 F.3d 804 (2d Cir. 2000), requires the federal habeas court to find an adjudication on the merits. Jimenez, 458 F.3d at 146.  Jimenez also instructs habeas courts that the analysis of whether or not a decision was on the merits answers both the question of whether federal review is warranted

at all, and whether the federal court should apply AEDPA deference to the state court decision.  Id. at 145-146.

Here, the crucial portion of the Appellate Division's opinion seems to rest mainly on the merits.  Mateo, 5 A.D.3d at 507, 772 N.Y.S.2d at 577.  The plain language of the opinion suggests the court's judgment rested on alternative procedural and merit-based grounds, militating in favor of applying the Fama rule for "either/or" dispositions.  This would require that the Appellate Division's decision that Mateo was not denied a fair trial be treated as having been decided on the merits of the federal law ground.  Jimenez, 458 F.3d at 146.

Jimenez further instructs habeas courts to "classify" the state court decision as either: (1) "fairly appearing to rest primarily on federal law or to be interwoven with federal law"; or (2) "fairly appearing to rest primarily on state procedural law."  Id. at 145.  If the state court's decision falls into the first category, and does not "contain a clear statement of reliance on a state procedural bar," the decision must be treated as having been made on the merits.  Id. at 138.  This result is in harmony with the Supreme Court's command that a state court's reliance on a state procedural ground be clear from the face of the opinion before a federal court finds that a habeas petitioner's claim was not decided on the merits.  See id. at

11

137-138 (reviewing <u>Harris</u> and <u>Coleman</u> requirements); <u>see also</u>
<u>Michigan v. Long</u>, 463 U.S. 1032, 1040-1041 (1983) (holding that
when adequacy and independence of state law ground is not "clear
from the face of the opinion," federal courts must presume that
the state court decided as it did because it was required to do
so by federal law).

The Appellate Division opinion does not specify the basis
for its statement that petitioner's claim was unpreserved.
Further, all of the cases cited after the sentence in question
address the merits of the circumstantial evidence instruction,
and none address the failure to preserve an issue for direct
appeal.  <u>Mateo</u>, 5 A.D.3d at 507, 772 N.Y.S.2d 577 (citing cases).
Thus, according to <u>Jimenez</u>, the decision must be treated as
having been disposed of on the merits, bringing it within the
ambit of federal habeas review.  Because the decision is
considered "on the merits" for the purposes of AEDPA review, it
must also be afforded the deference required by § 2254(e).
<u>Jimenez</u>, 458 F.3d at 146.


**ii.  Merits**

As noted above, before a federal court can grant habeas
relief to petitioner, a claim adjudicated on the merits in state
court must have resulted in an adjudication that was "contrary

to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court of

 the United States," or was "based on an unreasonable

determination of the facts in light of the evidence presented in

the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Mateo

argues that the challenged jury instruction deprived him of a

fair trial as guaranteed by the Sixth Amendment, Pet. at 5,

specifically, that giving such an instruction allowed the jury to

convict based on less than guilt beyond a reasonable doubt, in

violation of the principles laid down in In re Winship, 397 U.S.

358 (1970).  Thus, Mateo claims that the Appellate Division

unreasonably applied clearly established federal law when it held

that "the charge, read in its entirety, was fair, balanced, and

not prejudicial to the defendant."  Mateo, 5 A.D.3d at 507, 772

N.Y.S.2d at 577 (citations omitted).

     While the right to a fair trial is clearly of constitutional

significance, and Mateo has identified the requisite "clearly

established precedent," he cannot show that the Appellate

Division's holding is contrary to, or involves an unreasonable

application of, the Winship standard.  As an initial matter, the

instruction given is an accurate statement of the law in New

York, see, e.g., People v. Geraci, 85 N.Y.2d 359, 369, 649 N.E.2d

817, 823, 625 N.Y.S.2d 469, 475 (1995) ("Circumstantial evidence

is not a disfavored form of proof and, in fact, may be stronger
than direct evidence....") , as well as a fair statement of the
law in a number of other states and some federal circuits,
including the Second Circuit.[1]

Additionally, the trial court's instruction that
circumstantial evidence may at times be stronger than direct
evidence is not at variance with any directive issued by the
Supreme Court with regard to the weight of circumstantial
evidence.  In <u>Holland v. United States</u>, 348 U.S. 121 (1954), the
Supreme Court held that circumstantial evidence is intrinsically
no different than direct evidence, and stressed that the
essential issue is whether the jury was properly instructed that
they must find guilt beyond a reasonable doubt on the basis of
all the evidence in the case.  With both kinds of evidence, "the
jury must use its experience with people and events in weighing
the probabilities.  If the jury is convinced beyond a reasonable
doubt, we can require no more."  <u>Id.</u> at 139-140.

In addition to the trial court's repeated reference to, and
elaboration of, the reasonable doubt standard, <u>see</u> Tr. at 210:6-

---

[1] <u>See, e.g.</u>, <u>United States v. Sureff</u>, 15 F.3d 225, 228 (2d Cir.
1994) (acknowledging that guilt beyond a reasonable doubt may be
proved by circumstantial evidence alone); <u>Peplinski v. Fobe's
Roofing</u>, 186 Wis. 2d 308, 318, 519 N.W.2d 346, 349 (Wis. Ct. App.
1994), <u>aff'd</u> 193 Wis. 2d 6 (holding that circumstantial evidence
is often "stronger and more satisfactory than direct evidence").

213:21, the supplemental charge itself instructed the jury that
"[t]he weight to be given to circumstantial evidence is up to
you, the jury," Tr. at 235:15-16.  Because the instruction is
both in harmony with New York law, and is not inconsistent with
any Supreme Court precedent regarding circumstantial evidence and
reasonable doubt, the Appellate Division did not misapply federal
law when it upheld the validity of the instruction.  Thus,
Mateo's first argument must be rejected.

### b.  Excessiveness of sentence

Mateo's next argument is that his statutory maximum sentence
of eight and a third years to life is excessive.  Pet. at 6.
Mateo raised this argument on direct appeal, and the Appellate
Division held that "[t]he sentence imposed was not excessive..."
Mateo, 5 A.D.3d at 507, 772 N.Y.S.2d at 577.  Under AEDPA,
federal review is limited to the question of whether the
Appellate Division misapplied clearly established federal law by
its holding.  28 U.S.C. § 2254(d).

Petitioner does not dispute that his sentence falls within
the range permitted by New York law.  N.Y. Penal Law
70.00(3)(a)(2) (specifying minimum and maximum ranges for
defendants convicted of class A-II felonies).  Generally, when a
sentence falls within the permissible state range, no federal

constitutional issue exists.  See White v. Keane, 969 F.2d 1381 (2d Cir. 1992) (holding that state habeas petitioner failed to raise an issue of federal law by challenging length of sentence permitted by state statute).

Even if Mateo's argument could be construed as claiming that the sentence imposed was in violation of his Eighth Amendment right, which prohibits sentences "grossly disproportionate to the severity of the crime," Rummel v. Estelle, 445 U.S. 263, 271 (1980), his claim would fail.  Eighth Amendment challenges to the excessiveness of sentences have almost universally failed outside of the capital context.  See Harmelin v. Michigan, 501 U.S. 957, 995 (1991) (noting "qualitative difference between death and all other penalties").  Further, a sentence that is in line with a valid state law simply does not constitute cruel and unusual punishment in the constitutional sense.  See Long v. Lord, No. 03-CV-0461, 2006 WL 1977435, at *14 (N.D.N.Y. Mar. 21, 2006) (citing Brumfield v. Stinson, 297 F. Supp. 2d 607, 622 (W.D.N.Y. 2003)) (other citations omitted).  Because the statutory maximum sentence imposed on Mateo does not amount to constitutionally cruel and unusual punishment, the Appellate Division did not misapply any federal law by holding that his sentence was not excessive.  Thus, petitioner is not entitled to habeas relief on this ground.

**c. Sentence vindictively based on crimes for which Mateo was acquitted**

Mateo's next argument is that the sentencing court based his sentence on crimes for which Mateo was acquitted. As noted above, there generally exists no constitutional issue when a sentence falls within the range permitted by state law. See White, 969 F.2d at 1381. There is an exception to this rule, however, "when an enhanced sentence is 'motivated by actual vindictiveness toward the defendant for having exercised guaranteed rights.'" Morales v. Miller, 41 F. Supp. 2d 364, 380 (E.D.N.Y. 1999) (quoting Wasman v. United States, 468 U.S. 559, 568 (1984)). Such a sentence would run afoul of a defendant's Due Process right. Id. at 380. Mateo does not contest that his sentence fell within the permissible statutory range. Thus, as petitions are construed liberally in favor of pro se litigants, one can construe Mateo's petition as arguing that the Appellate Division misapplied the actual vindictiveness standard when it held that he was not sentenced for crimes for which he had been acquitted, thereby raising an issue of federal law.[2] See Sharpe

---

[2]  Mateo's petition states this ground without elaboration, as follows: "[The sentence] appeared to be based on the court's disagreement with the jury's verdict." Pet. at 5. Thus, the following discussion relies on Mateo's brief to the Appellate Division, where the same argument was originally raised.

v. Conole, 386 F.3d 482, 484 (2d Cir. 2004) (holding that where a "complaint was filed pro se, we construe it broadly and interpret it to raise the strongest arguments it suggests.")

Petitioner points out that the sentencing court referred to "overwhelming" evidence, including the surveillance video of "the actual circumstances of the arrest", while explaining his decision to impose the maximum sentence. Sent. Tr. at 5:1-2. Petitioner argues that from this statement it can be inferred that the sentencing court accepted the prosecution's theory that Mateo acted in concert with Vidal in the drug sales charged. Mateo goes on to argue that this "concert" theory was the basis of the criminal sale count for which Mateo was acquitted. Br. at 15. Mateo then concludes that because the sentencing court referenced the evidence supporting the criminal sale count when expressing its reason for imposing the maximum sentence for the criminal possession count, Mateo was effectively sentenced for a crime for which he had been acquitted. Id. at 15.

This argument is unpersuasive. The sentencing court's statement gives rise to no such inference. The court merely stated that it found the surveillance video and other evidence "overwhelming." Sent. Tr. at 5:1-4. Furthermore, the surveillance video and other evidence to which the sentencing court made reference also supported Mateo's culpability for the

18

possession count, for which he was convicted.  There is nothing

in the record to support Mateo's contention that the court

improperly relied on the acquitted sales count when imposing the

sentence.  Thus, Mateo's self-serving statement that the

sentencing judge acted vindictively is insufficient to support a

claim of actual vindictiveness.  See Morales, 41 F. Supp. 2d at

380-381 (finding "meritless" a § 2254 actual vindictiveness claim

based on judge's statement that "the jury has already shown

[defendant] mercy [by acquitting on other charges]" before

imposing maximum sentence); see also Mayerhofer v. Bennett, No.

02-CV-0074, 2007 WL 1624767, at *7 (N.D.N.Y. June 6, 2007)

(report and recommendation, adopted by District Court) (rejecting

§ 2254 petition, and holding that "mere fact that the trial

court, following conviction, imposed a high sentence does not, in

and of itself, establish 'actual vindictiveness'") (citing

Naranjo v. Filion, No. 02-CV-5449, 2003 WL 1900867, at *10

(S.D.N.Y. Apr. 16, 2003)) (other citations omitted).

Further, even assuming the sentencing judge did rely on the

sales count, the Supreme Court has held that federal courts may

consider conduct for which a defendant was acquitted while

sentencing, if the conduct was proved by a preponderance of the

evidence.  See United States v. Watts, 519 U.S. 148, 156 (1997).

Thus, the Appellate Division did not misapply any federal law in

rejecting this claim, and Mateo is not entitled to relief on this
ground.


**d.  Insufficiency of the evidence**

Petitioner's final claim is that the evidence was
insufficient to support his conviction.  This raises an issue of
federal law, warranting habeas review, in the form of a Due
Process challenge.  See Jackson v. Virginia, 443 U.S. 307, 320-21
(1979) (holding that the Due Process clause requires proof beyond
a reasonable doubt of every element of the crime charged.)


**i. Exhaustion**

The state argues that this claim is procedurally barred, as
it was not exhausted in state court.  See Galaraza v. Keane, 252
F.3d 630, 638 (2d Cir. 2001) ("In order to preserve an issue for
collateral review, a habeas petitioner must exhaust all available
state court remedies by 'fairly present[ing]' his claims to the
state courts.") (quoting Daye v. Attorney Gen. of the State of
New York, 696 F.2d 186, 191 (2d Cir. 1982) (en banc)).  Here,
Mateo did not raise the sufficiency of the evidence on direct
appeal.  Although appellate counsel's failure to raise this
argument was the basis of Mateo's coram nobis petition, this is
insufficient to exhaust.  See Levasseur v. Pepe, 70 F.3d 187, 192

(1st Cir. 1995) (finding that prior court's treatment of petitioner's underlying substantive claims in the context of ruling on his ineffective assistance claim did not preserve substantive claims themselves for review on collateral attack); see also Reed v. Strack, No. 97-CV-2513, 1999 WL 187422, at *3 (E.D.N.Y. Mar. 25, 1999) (holding that raising a Due Process claim as the basis of an exhausted ineffective assistance claim did not exhaust the Due Process claim itself, where the state court did not reach the substance of the underlying claim). Thus, Mateo's insufficiency claim has not been "fairly presented" to New York state's highest court. Galaraza, 252 F.3d at 638. Because a claim for habeas relief cannot be heard unless fully adjudicated in the highest state court, Mateo's insufficiency claim is unexhausted.

### ii. Merits

Nonetheless, pursuant to § 2254(b)(2) a federal habeas court may deny a non-meritorious claim, even if it remains unexhausted. Here, it is clear that Mateo's insufficiency claim is without merit.

When a state prisoner challenges the sufficiency of the evidence in a state court proceeding via § 2254, the federal court must view the evidence in the light most favorable to the

prosecution and determine whether "<u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Loving v. People of State of New York</u>, No. 04-CV-1284, 2007 WL 1825401, at *4 (E.D.N.Y. June 21, 2007) (emphasis in original) (citing <u>Dixon v. Miller</u>, 239 F.3d 74, 81 (2d Cir. 2002) (other citations omitted). Further, "[w]here the record supports conflicting inferences, the court 'must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" <u>Santana v. Poole</u>, No. 03-CV-3946, 2006 WL 3483923, at *7 (E.D.N.Y. Nov. 6, 2006) (quoting <u>Jackson</u>, 443 U.S. at 326). Thus, the burden on petitioner is often described as "heavy," as the state is provided the benefit of every inference. <u>Ponnapula v. Spitzer</u>, 297 F.3d 172, 179 (2d Cir. 2002) (citing <u>Quirama v. Michele</u>, 983 F.2d 12, 14 (2d Cir. 1993).

When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." <u>Ponnapula</u>, 297 F.3d at 172 (quoting <u>Quartararo v. Hanslmaier</u>, 186 F.3d 91 (2d Cir. 1999)). Under New York law, in order to convict petitioner of Criminal Possession of a Controlled Substance in the Second Degree, the state needed to prove beyond a reasonable doubt that petitioner "knowingly and unlawfully" possessed "one or more preparations,

compounds, mixtures or substances containing a narcotic drug and said preparations, compounds mixtures or substances are of an aggregate weight of two ounces or more . . .".  N.Y. Penal Law § 220.18(1).[3]  Cocaine is classified as a narcotic drug under New York law.  N.Y. Penal Law § 220.00(7) (McKinney's 2006).

The state's proof at trial consisted largely of the testimony of detectives Flores and Lloyd, detailing two drug deals outside the same restaurant.  Their accounts indicate that both sales were effected only after Vidal had privately met with petitioner outside of the restaurant.  Vidal, who actually passed the cocaine to detective Flores, met with petitioner immediately prior to both of the sales.  Tr. at 80:23-81:5; 138:8-10.  Detective Lloyd testified that during the second sale, petitioner placed his hand inside Vidal's pocket, and that moments later Vidal removed from the same pocket the cocaine he sold to Flores.  Tr. at 138:11-15.

From this series of events, a reasonable fact-finder could easily infer that petitioner provided to Vidal the cocaine that was eventually "sold" to detective Flores, and, thus, that petitioner had "knowingly and unlawfully possessed" the

---

3  N.Y. Penal Law 220.18 was amended in 2004 to require four, rather than two ounces of a narcotic drug.  Because petitioner was convicted prior to this amendment, and, in any event, was found to possess more than four ounces, the earlier statute is used here.

approximately one hundred and twenty grams of cocaine at issue.
See People v. Bradley, 193 A.D.2d 385, 386, 597 N.Y.S.2d 50, 51
(1st Dep't 1993) (affirming conviction for criminal possession,
holding that "[s]ince the defendant exercised authority over his
accomplice's dispensing of the contraband, defendant's own lack
of physical possession does not render the evidence legally
insufficient.") (citing People v. Manini, 79 N.Y.2d 561, 574-75,
594 N.E.2d 563, 570, 584 N.Y.S.2d 282, 289 (1992)).  The
inability of Vidal to conduct the deal independently, coupled
with petitioner's appearance at the scene immediately before each
sale, gives rise to an obvious inference that petitioner
possessed the cocaine before passing it to Vidal.  See United
States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993) ("[A]
conviction may be based on upon circumstantial evidence and
inferences based upon the evidence.") (citations omitted).  Thus,
Mateo's insufficiency claim does not warrant habeas relief.

**Conclusion**

For the foregoing reasons, Mateo's petition for writ of habeas corpus is denied. The Clerk of Court is directed to close the case.

Dated:     Brooklyn, New York
           August 13, 2007

SO ORDERED:

_____/s/_____
David G. Trager
United States District Judge